## BEDENBAUGH v. SOUTHERN RY.

1. EVIDENCE—REPUTATION.—The question being whether a party at a particular time was sober, it is not admissible to show his habit as to drinking at a previous time.

2. HIGHWAY—STREET—ESTOPPEL—RAILROADS.—Where a street is laid out by commissioners directed and authorized so to do by act of legislature, it becomes a public highway, without acceptance or working by public, and where a railroad company obtains permission from city council to locate its track in such a street, it is afterwards estopped from denying the existence of such street as a street.

3. CHARGE.—Appellant cannot complain that a charge is on the facts, if it states facts admitted by him.

4. IBID.—WRITINGS—STATUTES—CITIES.—It is the duty of Judge to construe acts of the legislature, and minutes of city council.

5. NEGLIGENCE—TORT—MASTER AND SERVANT.—Where a verdict in suit against master and servant on joint tort for injury caused by

1—69

negligence of the servant is rendered against the master and in favor of the servant, master is not entitled to have verdict set aside as to it, on ground that verdict absolving servant from negligence, absolves master.

Before DANTZLER, J., Newberry, July, 1903.  Affirmed.

Action by Robert Bedenbaugh against Southern Railway Co. and W. F. Outlaw.  From judgment for plaintiff against defendant railway, it appeals.

*Mr. T. P. Cothran,* for appellant, cites: *As to habit of plaintiff of excessive use of liquors:* 1 L. R. A., 708; 13 Q. B., 292; 78 Ga., 288; 47 L. R. A., 480.  *As to requisites of a street:* 2 Bay., 282; 80 Ia., 68; 17 Pick., 284; 11 Rich., 440. *As to right to use track in street longitudinally:* 176 U. S., 241.  *Verdict in favor of servant relieves master:* 54 L. R. A., 649; 142 U. S., 18; 63 Am. Dec., 627; 41 Am. Dec., 675; 15 R. I., 75; 7 Fed. R., 401; 71 Hun., 109; 49 Fed. R., 583; 145 U. S., 628; 24 Ency., 2 ed., 751, 752; 60 Me., 396; 43 Vt., 98; 116 Ind., 492; 13 Minn., 46; 15 N. J. L., 146; 2 Van Fleet For. Ad., 572.

*Messrs. Johnstone & Welch,* contra, cite: *Habit of excessive use of liquors, incompetent:* Green. on Ev., secs. 54, 55; 5 Ency., 2 ed., 863; 16 Ency. P. & P., 404; Dur. Com. on Law of Neg., 637; Abbott's Trial Ev., 51; 20 S. E. R., 764; 45 Am. & Eng. R. R. Cas., 212; 57 Ind., 378; 41 Conn., 252; 61 N. W. R., 1060; 38 Am. & Eng. R. R. Cas., 73; 19 Id., 356; 1 Allen, 185; 63 Mich., 383; 15 R. I., 83; 3 Allen, 408; 118 Mass., 509.  *As to what is necessary to constitute a street:* 4 Stat., 751; 6 Rich. L., 112; 2 Bay, 282; 5 Strob. L., 217.  *Verdict in favor of servant does not relieve master:* 65 S. C., 441.

April 21, 1904.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.  This is an action instituted

in the Court of Common Pleas for Newberry County on the 29th of May, 1901, for $20,000 damages, on account of personal injury received by plaintiff at Columbia, S. C., on the 9th of June, 1898. The case was tried before Honorable C. G. Dantzler, Judge, and a jury, at the July term, 1903. The jury rendered a verdict for $2,000 in favor of the plaintiff against Southern Railway Company, upon which judgment was duly entered. The complaint sets forth three causes of action. The theory of the first cause of action is, that the plaintiff, as a licensee, was upon the railroad track of the defendant railway when he received his injury from a collision with the engine of the defendant railway, which necessitated the amputation of his foot above the ankle. It is alleged that such injury resulted from the carelessness and negligence of the two defendants.

The theory of the second cause of action is the same as the first, except that his injury was due not only to the negligence of the two defendants, but to their wilfulness also.

The theory of the third cause of action is that the railway track of the Southern Railway Company lies longitudinally in Wayne street from Gervais street to the point and beyond where the plaintiff was injured, and that the plaintiff had a right, as a citizen of South Carolina, and a resident of the city of Columbia, to be walking on the track of the defendant railway company, at the point where he was injured; his rights and the rights of the railway company in the street being mutual in so far as the law was concerned; that the defendant, Outlaw, was the engineer on the engine of the railway, defendant, at the time of plaintiff's injury.

Testimony was introduced by the plaintiff tending to show that between the hour of eight and one-half and nine o'clock, on the 9th day of June, 1898, the plaintiff with a friend was returning from a visit of business and pleasure in the heart of the city of Columbia to the mill village of the Granby Mills, where he and his family resided; and that in making such return to his home he and his friend passed down Gervais street as far as the old passenger shed of the Columbia

and Greenville Railway, now owned by the Southern Railway Company, and thence passed down Wayne street, which said Wayne street was used as a thoroughfare by a large number of citizens, both in going from and returning to the aforesaid mill village, both by day and by night.    That over the said Wayne street the city of Columbia, within the limits of which the said Wayne street was located, had granted the privilege of its occupation, provided that such occupation of said street by the defendant railway should not interfere with the right of pedestrians to traverse said street.    That said Wayne street was one of the streets of the city of Columbia, the title to which was vested in certain commissioners and their successors in office, in fee simple, for the use of the State of South Carolina, by the act of the General Assembly of said State, passed in 1786. (See vol. 4 of the Statutes at Large, at page 753.)    That while Wayne was only partially completed as a street about where the injury to plaintiff occurred, yet other parts of the said street were placed in a condition for general travel by the people, having sidewalks constructed therein, with dwellings on each side of said Wayne street.    That said plaintiff was sober at the time of his accident, and was overtaken by the defendant's railway engine, without any headlight being lighted or any bell being rung, and that defendant, Outlaw, plainly saw plaintiff before the collision above referred to; and that the said engineer told the plaintiff immediately after his injury that he did see him, but concluded to scare him by continuing his passage down said Wayne street with the engine running between six, seven or eight miles an hour, in the belief that plaintiff would get off of said track; and that such conduct on the part of the engineer was a wanton, wilful and reckless disregard of plaintiff's rights.    That the plaintiff would have gotten off of said railroad track if he had heard the approach of said engine before the accident.

The defendant's testimony tended to show that it was a dark and rainy night, and that the engineer did not see the

plaintiff on the railway track until at a distance of eight or ten feet from the plaintiff, at which junction the engineer blew his whistle and reversed his engine in order that the plaintiff might not be injured. That as soon as the plaintiff was injured, two or three of the employees of said railway, to wit: Outlaw, the engineer, and Thomas, the conductor, together with Mr. Dale, of the Atlantic Coast Line Railway, reached the plaintiff about the same time, and placed him upon the tender of the engine, carrying him at once to the railroad hospital, near the Charlotte, Columbia and Augusta station, where a surgeon, Dr. Taylor, was summoned to and did render proper medical assistance. That the plaintiff and his friend, Mr. Yarn, had been drinking, as appeared from the odor of whiskey on them respectively. That the headlight on said engine was burning and that the whistle was being blown and the bell being rung at the time of the injury.

It should have been stated before, when reference was made to the testimony, that the answer of each one of the defendants was a general denial of the allegations of the complaint. The defendant railway company, however, supplemented the first defense of general denial by a second defense; that the plaintiff had gone upon said railroad track without the consent or knowledge of the said railway company, and was a trespasser thereon; and that on account of plaintiff's imprudent and improper and unlawful conduct in so being upon its track, he was injured, and that his injury arose from his own negligence and default. That by the said conduct of the said plaintiff in going upon said railroad track, he contributed to and brought about his own injury.

After the conclusion of the testimony of the parties, plaintiff and defendant, each side made requests to charge, and the whole charge of the Judge is as follows:

"The plaintiff in this action, Robert Bedenbaugh, brings this suit against the Southern Railway Company and W. F. Outlaw to recover $20,000 on account of the alleged wrongs mentioned and described in the complaint. It is alleged, substantially, that while the plaintiff was walking along upon

the railroad track of the Southern Railway Company, code-fendant of W. F. Outlaw, alleged also to be a street of the city of Columbia, in this State, that he was injured by the defendant in the manner mentioned and described in the complaint; that this injury was due, it is alleged, to the care-lessness of these defendants, and also to their wanton dis-regard of his rights, reckless disregard of his rights, inten-tional disregard of his rights.

"Now, Mr. Foreman and gentlemen, you are to inquire into this case, having settled first, that the plaintiff was injured, what causes led to his injury; whose fault was it? Was it the fault of these defendants or of either of them, or was it due to his own negligence? That should be your inquiry in this case. Furthermore, was it on account of a wanton, wilful disregard of the rights of the plaintiff by the defendants or either of them?

"Negligence, Mr. Foreman and gentlemen, is a failure to exercise due and ordinary care; that is negligence. Actual compensatory damages are awarded where an injury results to another from the negligence of another, from a negligent disregard of the rights of the person injured. Punitive damages are awarded from a wilful, intentional disregard of the rights of another, those rights being known to the person who so disregards them. A malicious act being an inten-tional, unlawful act, knowing such act to be unlawful. Now, Mr. Foreman, if you would go and cut down a pine tree, for instance, upon your neighbor's land, not knowing it to have been your neighbor's land, that would not be a malicious act, it would be an unlawful act, and it would be intentional on your part, but you did not know it was an unlawful act. Therefore, a malicious act is the doing of an intentional, unlawful, wrongful act, knowing it to be wrongful. It is also a wanton, reckless disregard of the rights of another. For a negligent disregard of the rights of another, actual damages are awarded, if the injury results from such disregard. For a wilful, wanton disregard of the rights of another, punitive damages are awarded. Actual dam-

ages, compensatory damages, are awarded for the purpose of placing the person injured in the position he previously occupied, as far as money can do it. Punitive damages, for the purpose of deterring that one or others in like circumstances from committing the same kind of act. It is not for the purpose of compensating the person injured, but for the purpose of deterring the person or persons who inflicted the injury from doing such a wanton and reckless act, an act in reckless, wanton disregard of the rights of other people; that is what punitive damages are awarded for.

"Now, when one is injured on account of the alleged negligence of another, and the person injured has been injured on account of his own negligence as a proximate cause of such injury, then he cannot recover. That is called contributory negligence; but there can be no contributory negligence where there has been a wanton, wilful and malicious injury. So, when you come to consider the allegations in this complaint, that the plaintiff was injured on account of the wilful disregard of his rights by the defendants, or either of them, you are not to consider anything in reference to contributory negligence; that would be a wilful tort, an intentional wrong doing, knowing the act committed was wrong. I defined malice to you a while ago. It is the intentional doing of an unlawful act, knowing it to be wrongful and unlawful.

"Now, those are questions of fact for you to determine, for you to ascertain from the testimony adduced from the stand. How was the plaintiff injured? What was the cause of his injury? Who is responsible for it? Are the defendants, or either of them, responsible for it, or was the plaintiff himself the cause of it and responsible for it, by his own negligence as a proximate cause of it, responsible for it, by his own negligence as a proximate cause of the injury, or did the defendants, or either of them, inflict this injury upon the plaintiff with a wilful, wanton disregard of his rights?

"Now, if you find for plaintiff against both of these defendants, the form of your verdict would be, we find for the plaintiff, expressing your finding in letters, not figures. If

you find for plaintiff against one of these defendants and not against the other, the form of your verdict would be, we find for the plaintiff against the defendant, naming the defendant you find against, expressing your finding in letters and not in figures, and we find for defendant, naming the defendant in whose favor you make the finding.

"The plaintiff, when he comes into Court, Mr. Foreman and gentlemen, must prove his cause by the preponderance of the testimony, by the greater weight of the evidence. That does not necessarily mean a greater number of witnesses who testify on any side of the issue or issues involved in any case; but according to the weight you give to the testimony of each witness.

"I am requested to charge you, Mr. Foreman and gentlemen, by the defendants these propositions of law:

" '(1) It is essential to constitute a street that it be actually laid off, opened and used as a street. If, therefore, that portion of Wayne street where the collision occurred is not shown to have been so laid off, opened and used, the plaintiff cannot claim that he was in a street at the time he was injured.' I decline to charge you that proposition of law, Mr. Foreman and gentlemen. Ordinarily, that would be correct, but this street in Columbia was made a street by a special enactment of the State of South Carolina, and it is a street, if it is laid out as a street, whether it is worked or not, or whether it is used or not as a street, it is a street in contemplation of the law.

" '(2) The charter of the Charlotte and South Carolina Railway Co. authorizes the company to enter the town of Columbia and under certain terms to occupy the streets. By a subsequent act this company was consolidated with the Columbia and Augusta Railroad Co., under the name of the Charlotte, Columbia and Augusta Railroad Co. This last named corporation succeeded to the charter rights of the Charleston and South Carolina Railroad Co. If the defendant, Southern Railway Co., by valid purchase, became the owner of the property, rights and franchises of the Char-

lotte, Columbia and Augusta Railroad Co., such Southern Railway Co. succeeded to all the charter rights of the Charlotte and South Carolina Railroad Co., and had the same rights as it to occupy the streets of Columbia with its track.' I charge you that as a correct proposition of law.

" '(3) To constitute a 'traveled place,' in the sense used in the act requiring signals to be given, the place must be one where the public has acquired the legal right to pass. A railroad yard is not such 'traveled place.' I so charge you.

" '(4) The use of a railroad track longitudinally can never ripen into a presumptive right.' I so charge you.

" '(5) If plaintiff had no legal right to walk upon the defendant's railroad track, he was a trespasser, and the company owed him no duty except to refrain from wilfully injuring him after his presence and danger were known and appreciated.' I charge you that. That brings up the law as to rights. A person who has no license, no permission from a railway company to walk along its track, is a trespasser, and a railroad company is not liable to such person on account of any negligence on part of it. It is not liable in damages to such person on account of its failure to exercise due and ordinary care, but its only liability rests upon a wanton, intentional injury to such a person. A railway company, to be liable for injuring a trespasser upon its property, the injury must have been intentionally done—it must have been done with wanton and reckless disregard of human life and the rights of such person. Now, a different rule prevails where a railroad company permits any person or persons to travel along its track; then such a person would become a licensee in his relation to the railway company, and the railway company would be bound under the law in such circumstances where it consents to and permits any person or persons to travel along its railway track, and would be liable on account of its failure to exercise due and ordinary care in regard to such person, when the person is a licensee and not when he is a trespasser.

" '(6) An engineer has the right to assume that an adult

will get off the track upon the approach of an engine when proper signals are given.' That is correct. ·

" '(7) If the servants of the defendant made every reasonable effort to avoid the collision after knowledge of plaintiff's presence, or after they should have known of it, the defendant is not liable.' That is correct.

" '(8) If the plaintiff himself were negligent, and such negligence contributed to the result as a proximate cause, he is not entitled to any damages. Contributory negligence to any extent will defeat a recovery.' That is a correct proposition of law. Contributory negligence, as I charged you before in my general remarks, must be such negligence as is a proximate cause of the injury.

" '(9) If the plaintiff was injured at a point on defendant's track 'where he had no legal right .to be, although he and others in the neighborhood had been in the habit of using the track at that point as a footpath, and had never been forbidden to do so by defendant company, he was a trespasser, and the defendant company is not liable in damages unless it injured the plaintiff wilfully or under such circumstances of recklessness as evidenced a reckless disregard of human life.' I charge you that as a correct proposition of law.

"I am requested by plaintiff in this case to charge the following proposition of law:

" '(1) The city of Columbia is the capital of the State of South Carolina, the former seat of government having been located in Charleston. The Legislature of this State, with the purpose of changing the seat of government from Charleston, authorized the purchase of the present site of the city of Columbia. The site having been purchased pursuant to the legislative authority and direction, certain commissioners were appointed to lay off the city into streets, which streets, by said legislative act, were declared vested in the said commissioners and their lawful successors for the use of the State of South Carolina. Any street so laid off became a public way, over which the citizens of this State had the right to travel. By the act of so purchasing the said

site, and so laying off the said street, they became at once public ways, without acceptance or use thereof of the city of Columbia or the public being necessary to dedicate them to the public. They were public ways after that by legislative authority, which entitled the public to use the same for the purpose of travel. If, therefore, you find that the track of the Southern Railway Company is laid down in Wayne street as alleged in the complaint, and if you find that Wayne street is one of the streets so laid off as before described, then the plaintiff had the right to the use of this street as much so as the Southern Railway Company, their rights therein being mutual.' I charge you, Mr. Foreman and gentlemen, that as a correct proposition of law, with this amendment and modification: If you find that Wayne street is one of the streets—if you find that the track of the Southern Railway Co. is laid down Wayne street, as alleged in the complaint; if you find Wayne street one of the streets so laid off as before described, then while their rights to that street— rights of the plaintiff in this case and defendant in this case—would be mutual, yet the plaintiff would not be entitled to use that street to the exclusion of the railroad company, and the plaintiff would have no legal right to get upon that track of the Southern Railway Co., in disregard of the rights of the Southern Railway Co. to operate its trains upon that track. He would have no right to do that, under such circumstances the defendant, Southern Railway Co., would have the right to use those streets, but with a due regard of the rights of the citizens of the State of South Carolina traveling along such street. I charge you that proposition, with that modification, explanation or amendment, as it may be called."

After the verdict of the jury, the defendant, railway company, made a motion as follows:

"Mr. Cothran: I make a motion that judgment be entered in favor of the defendant, Southern Railway Co., notwithstanding the verdict, upon the ground that the plaintiff alleges a joint and concurring negligence on the part of the

Southern Railway Co. and W. F. Outlaw, and that the joint and concurring character of that tort is based upon the negligence of Outlaw, servant of the railway company, whose negligence being attributed to the Southern Railway Co., according to the decision of the Supreme Court in this State, a case of joint and concurring negligence is made out. The jury by their verdict having exonerated Mr. Outlaw, the basis of the action is gone. The jury found that Mr. Outlaw was not guilty of any negligence, and the action is based upon the negligence of Mr. Outlaw, he being a servant of the railway company, makes it, according to the decision in the Schumpert case, joint and concurring negligence of the master and servant. We make a motion that judgment be entered in favor of the railway company. Failing in that, we make a motion for a new trial upon the minutes of the Court. The ground for a new trial would be that the verdict of the jury has shown that Outlaw was not to blame in this matter, and that there is nothing upon which a verdict against the Southern Railway Co. can be sustained. On the additional ground that the verdict is contrary to the weight of the testimony."

After hearing argument from both plaintiff's and defendant's counsel, the Court reserved its decision.

On August 24, 1903, Judge Dantzler filed an order refusing both motions, without giving any reasons.

Notice of appeal, upon the following exceptions, was then served by the defendant, railway company:

"I. His Honor erred in excluding testimony offered on the part of the defendants to show that at the time of the accident to the plaintiff he was a man addicted to the habit of excessive use of intoxicating liquors.

"II. Error in refusing the defendant's first request to charge, which was as follows: '1. It is essential to constitute a street that it be actually laid off, opened and used as a street. If, therefore, that portion of Wayne street where the collision occurred is not shown to have been so laid off, opened and used, the plaintiff cannot claim that he was in a

street at the time he was injured.' The error consisting in this: The request contained a correct principle of law applicable to the case.

"III. Error of his Honor in charging: 'I decline to charge you that proposition of law, Mr. Foreman and gentlemen. Ordinarily that would be correct, but this street in Columbia was made a street by a special enactment of the State of South Carolina, and it is a street, if it is laid out as a street, whether it is worked or not, or whether it is used or not as a street, it is a street in contemplation of the law.' The error consisting in this: (a) It was a charge upon the facts to say that 'this street in Columbia was made a street by special enactment of the State of South Carolina.' (b) Such statement is erroneous. (c) Even if the street had been dedicated by the State and plotted, it was not a street until it was actually laid out, worked and used, so as to give the plaintiff the rights of a pedestrian in a street.

"IV. Error in charging the plaintiff's first request set out in the 'Case.' The error being: (a) It was a charge upon the facts to state that the site of the city of Columbia had been purchased pursuant to legislative authority and direction. (b) It was a charge upon the facts to state that the streets had been laid off by Commissioners. (c) It was error of law to hold that the purchase and laying off the streets made them public ways, without acceptance or user by the city of Columbia or the public, which entitled the public to the use of them for travel; for the reason that a street must be actually laid out and used before the public can acquire the rights of a pedestrian in a street. It is essential to constitute a street that it be actually laid off, opened and used as a street.

"V. Error in charging that if Wayne street was laid off, as described in the plaintiff's first request to charge, and if the track was laid down Wayne street, as alleged in the complaint, the railway company must operate its trains with due regard to the rights of the citizens of the State traveling along said street. The error being: Before the public or any

citizens can acquire the rights of a pedestrian in a street, it is essential that the street be actually opened, worked and used as a street. The purchase and laying off as a street did not make it a public way without acceptance and user by the city of Columbia or the public. Until that was done, the public had no rights in the use of the street which the railway company was bound to regard.

"VI. Error in refusing the motion of the defendant, Southern Railway Co., that judgment be entered in its favor upon the verdict, notwithstanding the verdict. Said motion was made upon the ground that as the plaintiff's cause of action was based entirely upon the alleged negligence of the defendant, W. F. Outlaw, which plaintiff contended made out a case of joint and concurrent negligence on the part of the railway company and the engineer, and the jury by their verdict having exonerated the engineer, the basis of the action was gone. The error consisting: In not holding that where a master and servant are sued jointly for the negligent act of the servant alone, imputed by law to the master, a verdict in favor of the servant precludes a recovery or entry of judgment against the master.

"VII. Error in refusing the motion of the defendant, Southern Railway Co., for a new trial. The ground of said motion was that the verdict of the jury showed that the engineer, Outlaw, was free from blame, and that as the action was based upon his alleged negligence, there was nothing upon which the verdict could be sustained. His Honor should have held that when a master and servant are sued jointly for the negligent act of the servant alone, imputed by law to the master, a verdict in favor of the servant effectually destroys the basis of the action."

We will now pass upon these exceptions in their numerical order.

I. The first exception relates to an alleged error of the Circuit Judge in ruling certain testimony was incompetent, and in order that we may understand this question, we will reproduce herein from the "Case:" C. W. Bishop, a

witness for the defendant, railway company, on examination was asked if he knew, about the year 1897 or 1898, the plaintiff's habits for drinking liquor. The answer, "I did." "Mr. Welch: We object. I would like to know the purpose of this testimony, so that I can base my objection to it. Mr. Cothran: We are not called upon to state the testimony. Let him state his objection. Court: Yes, sir. Mr. Welch: My objection is, his reason for offering that evidence last Court was, to show that he was a drinking man, and, therefore, likely to have been drunk on the occasion of the accident; that was the light in which it was offered before and upon that ground I wish to object to it. Testimony of former habits, former conduct, character and reputation, will not prove specific conduct. Court: I understand what you mean. Is that the object? Mr. Dean: That is the purpose. Those are the circumstances which we think should be allowed to go to the jury, along with all the circumstances shown to be present in this particular case to prove his habits, and especially when not engaged at work, and to what extent he had the liquor habit; after, of course, in the first instance, developing the scope of knowledge witness has upon that subject. Now, we think, your Honor, we have shown the circumstances surrounding Mr. Bedenbaugh on this particular night, his location, his conduct, what he was doing and how he was spending his time, and we have a right now to prove his habits. That is the purpose of the question. Court: I think, Mr. Dean, that it must have reference to the particular occasion in question. I do not think it would be competent, or relevant, to prove what a man's habits were generally, because one may be habitually addicted to the use of strong drink, and while so habitually addicted it might have been on some occasions he didn't use intoxicating liquors. I don't think that is competent in this case. Mr. Dean: I understand our friend takes the position it should be confined to his habits at the time of the occurrence, not before or since, and we understand that to be your Honor's ruling. Court: The question

resolves itself into this: What was the conduct and condition of the man at the time of the alleged injury? (By Mr. Dean): I want to ask you if you knew his habits with reference to liquor drinking in '98 or '99? Mr. Welch: I object. Court: I sustain the objection. Exception noted. Mr. Cothran: We have other witnesses upon the same line, and I suppose plaintiff makes the same objection and there will be the same ruling. Court: Yes."

We have examined the testimony carefully and find that four witnesses for the plaintiff had testified as to his condition for sobriety just before the accident, and at the accident and at eleven o'clock the night of the accident; and four of the witnesses for the defendants had testified as to the use of liquor by both the plaintiff and his friend, Mr. Yarn, at the time of the accident, thus showing that there was direct testimony on the issue of plaintiff's condition at the time of the accident. Therefore, the testimony of the witness, Bishop, who was not present at the time of the accident, but was about to testify as to the liquor habit of the plaintiff in the years 1897 and 1898, obtained while plaintiff was in Newberry, was secondary. We have taken care to reproduce from the "Case" the colloquy between the counsel and the Court on this subject, so that the exact question of the competency of the testimony for the purpose for which it was introduced might directly appear. The ruling of his Honor, the Circuit Judge, sought to limit the inquiry of the defendant as to the plaintiff's use of liquor to the precise moment of his injury. We agree with the Circuit Judge, that where there was direct testimony contradictory as it was of this condition of plaintiff at the time of the accident, it was not competent to go into the general habit of the plaintiff in his use of intoxicants. It seems to us that the recent case of *Reeves* v. *Southern Railway Company et al.,* 68 S. C., 89, is decisive of this point. In the case just cited it was sought to prove by the engineer, who was charged with answering a signal to stop and then running by it, that such a charge was not true, by allowing him to swear

that he had never done such a thing as that. This Court overruled an exception to the refusal of the Circuit Judge to allow such an answer by the engineer. To our minds this testimony seemed to bear on the question of character, and in 5 A.. & E. Encyclopedia of Law, second edition, 863, it is said: "The fact that a party to a civil action, or some person concerned in transactions out of which the action arose, is charged with fraud or moral delinquency, will not generally result in allowing evidence of character to be admitted."

We will not prolong this discussion, except by citing a few authorities which sustain our views: 16th Encyclopedia Pl. & Pr., page 404, section 11; Abbott's Trial Evidence, page 51; *Merchants National Bank* v. *Newton Cotton Mills,* 20 Southeastern Reporter, 764; *Atlanta & West Point Railway Company* v. *Newton,* 45 Am. and Eng. Railroad Cases, 212; *Gebhart* v. *Burkett,* 57 Ind., 378; *Scott* v. *Hale,* 16 Me., 326. "It was said in *Eaton* v. *Telegraph Company,* 68 Maine, that the best authorities clearly sustain the doctrine that the fact of a person having once or many times in his life done a particular act in particular way does not prove that he has done the same thing in the same way upon another and different occasions." *Chase* v. *Ry. Co.,* 77 Me., 62.

In the case of *Williams* v. *Edmunds,* 42 Northwestern Reporter, 534, it is said: "Upon the trial the defendant offered testimony tending to show that Sullivan was not addicted to the use of intoxicating liquors, and what his reputation was as to his being a reckless and careless driver or a good, faithful driver. This proposed evidence was excluded. The defendant's counsel in this Court does not attempt to claim that he was entitled to show the reputation of Sullivan as a driver, but he argues that he ought to have been permitted to show that the driver was a temperate man, and not in the habit of using intoxicating liquors. He bases his argument on the fact that the officer who arrested Sullivan as he was driving back from the depot was allowed to testify, as were others, that he was under the influence of liquor. The de-

fendant was permitted in rebuttal of this evidence to show that Sullivan was not intoxicated or under the influence of liquor at the time the plaintiff's witnesses testified he was. Sullivan also testified that he had not been drinking that day, and that he was not in the habit of drinking or getting drunk. We think the condition of the driver, as to being drunk or sober at the time or about the time of the accident, was a proper subject of investigation, being part of the *res gestae*. It was not, however, necessary or material to go further into the question of what his habit was as to the use of intoxicating liquors, or whether or not he was a temperate man, in the opinion of other people. It would have raised a collateral issue, the termination of which would have had but slight, if any bearing upon the question at issue in the case. We do not think his general character for sobriety was in issue or admissible any more than his general character and reputation as a careful driver. The jury were only concerned with his condition and manner of driving on the day in question at the time of the injury to the plaintiff."

In the case of *William Hampton* v. *Jno. B. Taylor, as treasurer,* 15 R. I., 83, the rule is announced as follows : "In the course of the trial, the defendant asked a witness, called by him, if the plaintiff was a man of intemperate habits. The plaintiff objected, and the Court sustained the objection. We do not think the Court erred. If the plaintiff was sober when he fell, the fact that he was of intemperate habits would not preclude his recovery; and we do not think the mere proof that he was of intemperate habits would warrant the inference that he was not sober."

II. It is well that we should observe that the appellant in the first two instances of his request to charge states what he regards as the essentials of a street, to wit: that it be actually laid off, opened and used as a street. In the remainder of his request to charge he seeks to make a particular application of his doctrine in law by confining it thus: "If therefore, that portion of Wayne street where the collision occurred, is not shown to have been so

laid off ,opened and used, the plaintiff cannot claim that he was in a street at the time he was injured." The Circuit Judge said: "I decline to charge you that proposition of law." The act of the legislature, passed in the year 1786, 4 Statutes at Large, of this State, pages 751 and 752, lays out a plan for the government of commissioners, provided for in said act, wherein specific directions are given to said commissioners for laying out the city of Columbia. Section 1 of said act, after the words of enactment, declares: "That the commissioners hereafter directed to be appointed shall be, and they are hereby, authorized and required to lay off a tract of land of two miles square, near Friday's Ferry, on the Congaree River, including the plain of the hill whereon Thomas and James Taylor, Esquires, now reside, into lots of one-half acre each, and the streets shall be of such dimensions—not less than sixty feet wide—as they shall think convenient and necessary, with two principal streets, running through the center of the town at right angles of one hundred and fifty feet wide; which land shall be, and the same is hereby declared to be, vested in the said commissioners, and their lawful successors for the use of this State." The period of about one hundred and seventeen years has elapsed since the passage of this act. The city of Columbia has been established; the seat of government is upon the eight acres, as required by this act; the streets of said city have been laid off; Wayne street is one of the streets so laid off by the commissioners. As was said by the late Chief Justice McIver, as the organ of this Court,, in the case of the *State* v. *City of Columbia,* 27 S. C., page 144, 3 S. E., 55: "It will be observed that the commissioners are not only authorized, but are *required,* to do certain things, and, upon a well settled principle, we must assume, in the absence of any evidence to the contrary, that they did what was required of them by the act. Now, what was required of them? The act shows that they were required 'to lay off a tract of land of two miles square, near Friday's Ferry, on the Congaree River, including the plain of the hill whereon Thomas and

James Taylor, Esquires, now reside.' The only discretion with which they were invested was as to the width of all but the two principal streets, and even that was limited so that none of the streets should be less than sixty feet in width. * * * This being their duty, the presumption is that they did it."

The location and name of Wayne street were *palpably* recognized by the city council of Columbia in the year 1860, as appears by the record of said city, and was so recognized at that date by the predecessors of the defendant railway. By the testimony of the defendant itself, it is established that said Wayne street, on the west side of Gervais street, has been laid off, accepted by the public and used by the public in the matter of the street itself and the pavements on each side, along which beautiful residences have been built on the east side of said Gervais street; Wayne street has also been laid off and used by the public for some distance. In the years 1890 and 1896, the predecessor of the defendant railway was granted, by the city council of Columbia, the right to lay its track northward upon said Wayne street, upon the condition that the rights of the railroad should not affect the rights of pedestrians to use the same.. The Circuit Judge, when he decided that the request to charge by the defendant should not be made, but refused, might have stopped with said announcement, because, under the decision of this Court in the case of the *State* v. *Lythgoe,* 6 Rich. Law, page 112, in the syllabus of the case, it is announced: "Where, in incorporating a town, the legislature gives the town council jurisdiction over the streets as highways, and uses the word 'streets' in reference to such as had been before designated and marked out, such streets, so designated by legislative authority, become highways, for obstructing which an indictment will lie; and it is immaterial that the street obstructed has not been entirely opened and made fit for all uses." The report of the case: "Fairfield street (a street of the City of Aiken) crosses the railroad. The defendant's premises are on the south of railroad. The northern end of that street

had been worked on by the corporate authorities and labor, but not the southern end, beyond the matter of the well aforesaid. The southern end had never been opened, the original growth yet remained, except in so far as it had been cut down by Lythgoe. * * * The defendant had extended his fences, in two places, across what was claimed as Fairfield street, had been warned by council to take them down, or they would be pulled down. He refused. * * * I charged the jury that * * * the question was whether the legislature, in 1835 or 1836, used the word 'streets,' in reference to such as had been before designated and marked out, and whether Fairfield street was one of them; that if this should be found affirmatively, it was immaterial whether the street had been entirely opened and rendered fit for all uses. *It was enough that it had been distinctly designated by legislative authority.*"

The Court affirmed the judgment of the Circuit Court in Lythgoe's case. Here was a distinct guide for the Circuit Judge in his charge, and under the authority of this case it was perfectly competent for the plaintiff or any other inhabitant to have used Wayne street throughout its length and breadth, because the title was expressly retained in said street under the aforesaid act by the commissioners elected under said act, or their successors in office. But it seems that under the authority of the law the city council, in the year 1860, granted permission to the defendant railway to lay its track through the eastern portion of Wayne street up to its intersection with Gervais, reserving to predecessors their right to use such portion of Wayne street even along with the defendant railway. The defendant so located its track in said Wayne street in accordance with such permission of the city council of Columbia. This the city council had a right to do under the law. *South Bound Railway Company* v. *Burton et al.,* 67 S. C., 515. Of course, the use of said street by pedestrians was necessarily confined to the use of said street so as not to interfere with the running of trains of the defendant railway on said Wayne street. Thus, the

defendant railway is now estopped from denying the exist-
ence of Wayne street at the very point where plaintiff was
injured; and from this standpoint the Circuit Judge was
justified in his refusal to charge as the defendant requested.
This exception is, therefore, overruled.

III. The foregoing observations render it unnecessary in
considering the appellant's third exception, except to say
that it is not error for the Circuit Judge to charge
upon facts that are admitted by the appellant himself
because he referred to the place of accident as having
occurred on Wayne street;; therefore, it was no error on the
part of the Judge, instead of using the word "Wayne" to
say "this street." There was no error in the state-
ment and there was no necessity, as we have already
demonstrated, for this street to have been actually
laid out, worked and used, so as to give the plaintiff the
rights of pedestrians in such street.

IV. We see no error in the Circuit Judge's charging the
plaintiff's first request set out in the case. It is the duty of a
Judge under the law to construe all written papers and
submit such construction to the jury. When, there-
fore, the Circuit Judge construed the act of the
General Assembly and the minutes of the city council
of Columbia, he was but complying with such duty. To
this may be added the views we have already expressed
touching a legislative recognition and organization for the
location of a street. This exception, therefore, is overruled.

V. This question is disposed of by what we have already
held in construing the second and third exceptions. It is,
therefore, overruled.

VI. and VII. These exceptions may be considered
together and disposed of very briefly. This Court has
already decided in three late cases against the conten-
tion of the appellant, to wit: *Gardiner* v. *R. R. Co.*, 65
S. C., 341, 43 S. E., 816; *Carson* v. *R. R. Co.*, 68
S. C., 55. We adhere to our ruling in these several cases for

the reasons therein given, and these two exceptions are, therefore, overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be, and the same is hereby, affirmed.